Henry J. MORAVEK, Benedict P. Fieser and Verda L. Fieser, his wife, Plaintiffs-Respondents,

v.

Alex S. OCSODY and Rita Ocsody, his wife, Defendants-Appellants.

No. 33566.

St. Louis Court of Appeals, Missouri.

June 12, 1970.

Leo A. Politte, Washington, for defendants-appellants.

Hansen & Stierberger, Union, for plaintiffs-respondents.

LYON ANDERSON, Special Commissioner.

This is an action wherein plaintiffs seek a mandatory injunction requiring defendants to remove certain gates and obstructions erected by them across a roadway which traverses defendants' property and a permanent injunction enjoining them from thereafter obstructing said roadway by placing gates across same or doing anything to make said roadway other than an open roadway to plaintiffs' land. An easement by prescription is claimed by plaintiffs and denied by defendants. There was a finding and judgment below for plaintiffs. From this judgment defendants have appealed.

The farms owned by the parties to this suit are located in Franklin County, Missouri. Defendants, Alex G. Ocsody and his wife Rita, acquired their land, consisting of seventy-nine acres, from John P. Morisse in April 1940. Plaintiffs, Benedict P. Fieser and his wife Verda L. Fieser, purchased their farm from Monica P. Moravek and her husband Harry J. Moravek September 9, 1967. Said farm contains 131 acres and is located immediately north of defendants' property. On August 1, 1967 and prior to the purchase by the Fiesers, Harry J. Moravek and his wife sold a strip of land off the south end of their farm to their son Henry J. Moravek who owned a 60-acre farm immediately west of defendants' land and south of the Fieser property. This strip of land

runs eastwardly from the Henry J. Moravek farm to the roadway in question. This roadway runs north and south from plaintiffs' land through the western part of defendants' land to a county road. This county road connects with U. S. Highway 50 a considerable distance south of defendants' farm. From the south it enters defendants' farm at its southwest corner, then runs northwardly a considerable distance, then turns east across said farm. The roadway in question in this suit connects with the county road at this turn. A very short distance north of the bend in the county road are defendants' farm buildings. The buildings are east of the roadway over which plaintiffs claim an easement.

In 1906 the farm now owned by defendants was owned by the Fritz Dingerson estate. In that year it was sold to Henry Bray. On December 27, 1921 Bray sold the land to John P. Morisse who owned it until it was conveyed to defendants in 1940.

The chain of title to the Fieser farm runs as follows: In April 1919, Henry W. Kriete and his wife Alice sold the land to Henry G. Altemeyer. In October 1947 Mr. Altemeyer sold the farm to Monica P. Moravek, the wife of Harry Moravek, the mother and father of plaintiff Henry J. Moravek. Monica and Harry, after conveying a strip of the south end to Henry, sold and conveyed the property to the Fiesers in September 1967. Plaintiff Henry J. Moravek acquired his land from Mr. Story in 1951. The county road heretofore mentioned was established in the year 1905.

Arthur Heckelman, called as a witness by plaintiffs, owns a farm that adjoins the Fieser farm. He testified that he had lived in the vicinity of Gerald during his entire lifetime. His age was sixty-nine years. He stated he had, during his lifetime, traveled across both the Ocsody and Fieser farms. The trips were to haul fodder and hay. In doing this he used a team. He further testified that at no time during this period were there any gates across the road he traveled and no one stopped him or requested that he not use the road. It was a dirt road, free of stumps and just wide enough to go on through the farms in question. He traveled the road when Altemeyer owned and lived on the Fieser farm. A portion of the road was straightened out and relocated or moved to the west of the Ocsody buildings. The witness stated he thought this was done after Mr. Ocsody bought the property.

Fred Tegeler, aged seventy-two years, was called as a witness by plaintiffs. He testified that when he was 17, 18 or 19 years old he and his uncle crossed what is now known as the Ocsody and Fieser farms to take violin lessons from Joe Heckelman. He also testified the last time he was on the Altemeyer farm was to thresh wheat; that he got to the Ocsody farm by way of the county road, and to the Altemeyer farm on the roadway from the county road. This roadway had been changed since the time he traveled it to take violin lessons by straightening it as it passed the house on the Ocsody farm. This change was made by moving it to the west. The witness stated he did not know when this was done. He further testified that the road at that time consisted of wagon tracks in different places. "Q. More of a trail, was it? A. Yeah." The witness also testified as follows: "Q. Now, since you've known this road and traveled it has there ever been any gate across the road? A. No, I never seen no gate, no gap or nothing because we never went and opened nothing when we rode down there, you know."

Elizabeth Angel, age sixty-five, testified she had lived in the neighborhood since 1930. She stated that when a young girl she would visit her uncle John P. Morisse who then lived on the Ocsody farm, and also visit at the Altemeyer place. She further stated that there was a road across

the Morisse farm during this time, but it was closer to the house than it is now. It was moved to the west. She could not remember when the change was made.

Zeno Angel, age seventy-five, called as a witness by plaintiffs, testified he had lived in the neighborhood of Gerald all his life. He was familiar with the Ocsody farm from the time Henry Bray lived there, and the Fieser farm since Herman Altemeyer occupied it. Twenty-five or thirty years ago the roadway in question was a dirt road; a wagon road. It went past a log house and barn on the Ocsody farm when he first traveled it. It went through the Altemeyer (Fieser) farm to the Heckelman farm where it connected with another county road. There were no gates across the roadway when he traveled it. The road was relocated. After it was relocated he maintained the road by blading it, making ditches on the sides and leveling it. Mr. Moravek paid him for this service. Afterwards his son placed gravel on the road for which he was paid by Mr. Moravek. Mr. Ocsody did not pay for blading the road, nor did he attempt to prevent the process.

Witness Elmer Blaue, age fifty-two, first remembers going to the Fieser farm when it was occupied by one Henry Helmich about 1930 or 1931. At that time he was taken there in a Model T automobile over the roadway in question from the county road on the Ocsody farm. The purpose of the trip was to help with the threshing by carrying water for those engaged in the operation. A tractor and threshing machine were also taken in over the same route. Since that time he has delivered fuel oil and gasoline for the past four or five years to Mr. Moravek over the roadway in question, and also to Mr. Fieser. He remembers no gates across the roadway until the last year or so. He stated that it was a gravel road. No one ever tried to stop him using the roadway.

Plaintiff, Henry Moravek, testified that his parents, Harry and Monica Moravek,

purchased the farm now owned by Mr. Fieser from the Altemeyers about 1946. His parents did not move to the farm immediately after their purchase. His father remodeled the barn and the house in which the Altemeyers had lived, and put in electricity; also dug a deep well on the farm. His father had the land surveyed and fenced.

Mr. Moravek further testified that after his parents purchased the farm he would hunt and fish there. He built a bungalow on the farm in 1954 for use on weekends and in summer. After his father bought the farm Mr. Zeno Angel and his son rented the land for three years. After that his father operated the farm until he became ill in 1960. The father raised crops and ran cattle on the farm. After his father became ill the farm was rented to Mr. Sickendick and then to Mr. Tegeler. When his father and mother purchased their farm the roadway in question was in its present location. It was graveled and well maintained. There were no gates across the roadway until Mr. Ocsody put them up in 1968. From the time of the purchase of the farm until his death his father paid for maintaining the roadway. The work of maintaining it was performed by the witness, his father, Zeno Angel and the latter's son. They graded the roadway, ditched it, put in culverts and graveled it. Since his father's death, he, Henry Moravek, has been paying for maintaining it. Mr. Ocsody has never paid anything for maintaining the road since his father purchased his farm to the time the gates were installed in 1968. At no time did Mr. Ocsody object to the use of the roadway by his father or by him until the gates were installed.

Mr. Moravek further testified that he purchased his farm in 1952, and that to get to his place he traveled the roadway in question north from the county road to his father's farm, then to his land. At the present time there is a road from the Fieser farm to his land which he purchased from his father in August 1967. It

is the only access to his place. He also used the roadway in question to get to the summer house he built on his father's farm.

Mr. Moravek at the present time resides in Crestwood, Missouri, and to get to his farm he travels over U.S. Highway 50 to the county road heretofore mentioned, then over the roadway in question to the road that runs eastward to his land which he purchased from his father in 1967. There is a fence between his land and the Ocsody farm. Mr. Ocsody built a fence along the east side of the roadway sometime prior to 1950. There is no fence along the west side of the roadway. In January 1968 Mr. Ocsody told Mr. Fieser and Mr. Moravek that eventually he was going to close off the roadway, and they would have to find another way in and out of their farms.

Plaintiff Benedict P. Fieser lives on the farm purchased from Harry and Monica Moravek in 1967. He works at McDonnell Aircraft in St. Louis County. To reach his home he travels west over U.S. Highway 50, then northwardly over the county road and the roadway in question across defendants' farm. When he purchased his farm the roadway from the county road to his farm was a well maintained gravel road with no gates or cattle crossings across it. On its east side there was an old fence but none immediately west of it. Since owning his farm he had the road graded by a man named Brown from Owensville. Mr. Henry Moravek paid for this work. Mr. Ocsody did not pay or offer to pay for any of the work. Mr. Ocsody put in the gates across the roadway July 28, 1968 and July 30, 1968. Toward the end of the year 1967 he had a discussion with Mr. Ocsody at the latter's home. Mr. Ocsody at the time said he objected to the use of the roadway by Mr. Moravek and that eventually there would be gates erected. Mr. Ocsody made the same statements in January 1968 when he and Moravek were present in Ocsody's home.

Mr. Fieser further testified that living with him were his wife and five children; also his father and an uncle.

At one time Mr. Ocsody expressed an intention of pasturing cattle in the area west of the roadway. Mr. Fieser then told Ocsody that if it would cure his problem both he and Mr. Moravek were willing to help build a fence along the west side of the roadway.

Defendant Alex Ocsody took the stand to testify on his own behalf. He testified he had lived on his farm for about thirty-nine years. When he first moved to the farm there was a trail leading from the county road which was in front of the log house, and another close to where the roadway is at the present time. The land was rugged and grown up in sprouts, causing him to do a lot of clearing. There were no fences on the place. Herman Altemeyer lived on the farm now known as the Fieser farm when he moved there. Mr. Altemeyer, after leaving the county road, would go east of the house. This practice continued for about two and one-half years. After that he had a discussion with Mr. Altemeyer about changing the location of the roadway, after which the road was changed to its present location. He helped Mr. Altemeyer put it in its present location, after he directed where it should be located.

Defendant further testified that he started fencing his land when the late Mr. Moravek started to fence his. He started clearing his land immediately after moving on his farm, and continued clearing a little of it each year thereafter. He first acquired livestock in 1943 or 1944, and kept them in a fenced area around the barn which he later enlarged. He never told these plaintiffs they could not use the roadway. Mr. Altemeyer was the first to grade the roadway. After that there was ditching done; by whom the witness did not know. He did see Mr. Angel do some grading a couple of times. He did not object to Mr. Angel doing this.

On cross-examination defendant stated there were two wagon tracks leading through his farm to the Altemeyer (now Fieser) farm when he purchased his own

farm. Mr. Altemeyer used both for approximately two or three years after he purchased his farm. The roadway to the Altemeyer farm was graveled in 1943 or 1944. He built a fence on the east side of the roadway about a year and a half after Mr. Moravek built his fence. There was an opening in the line fence between his land and Mr. Moravek's farm at the roadway and no gates were erected. Mr. Moravek maintained the whole roadway to the county road and paid for such maintenance. Mr. Altemeyer paid for maintaining the roadway prior to the purchase of the farm by Mr. Moravek. Mr. Moravek since his father's death has bladed the roadway and put gravel on it clear to the county road.

Harry Brauks, age sixty-three, testified he first went to the Ocsody farm when he was about seven or eight years old. At that time he noticed wagon tracks leading up from the county road not too far apart. He said: "I wouldn't call it no road * *." He stated that at one time the farm was cultivated to a certain extent, but since that time it had been allowed to grow up in sprouts. He further testified he had been to the farm since the roadway in question was placed at its present location. The last time he was there was about four months ago. Part of the roadway was put through cleared land, and part, about one-half, through an area where there were sprouts. At one time when he lived on a farm west of the Ocsody and Moravek farms, he helped with the threshing on the Altemeyer farm. The threshing equipment was brought in over the roadway through the Ocsody farm. He had gone from the Altemeyer farm through the Ocsody farm when he was seventeen or eighteen years old.

Alex Bartha, defendant's brother-in-law, testified that in the summer of 1941 he built the house on the Ocsody farm in which defendant now lives. He was there for three months, twenty-four hours a day. He was asked if there was any traffic through the farm to the farms north and west of the Ocsody property. He replied, "I can't recollect any traffic. I was more or less busy but if there had been more than likely they would have interrupted me, come to see the place. But I don't remember anybody. In fact, I didn't even know there was a farm in back of the place at all. * * *" He further testified that the part of the farm where the roadway is now located was wild and bushy.

Defendants contend that plaintiffs were not entitled to a judgment in their favor for the reason that the evidence established that use of the roadway was not adverse under a claim of right, but was permissive in character. In support of this contention it is stated that the Ocsody farm is marginal land, and that aerial photographs taken in 1937 show that all three tracts of land were nine-tenths timber with the rest overgrown with brush and sprouts; and that aerial photographs taken in 1958 show that only about one-seventh of the Ocsody farm was in cultivation and none on the Fieser and Moravek farms. It is then argued that these facts raise a presumption that travel over the Ocsody land was in the beginning by permission which permissive use continued during the entire period of time the passageway was used to gain access to and from the lands now owned by plaintiffs; and that there was no adverse use or claim of right by plaintiffs until after the gates were erected in 1968.

There is authority for the proposition that an easement by prescription cannot be acquired over unfenced and unoccupied lands which are parts of vast areas of undeveloped territory. In these instances such use is rarely, if ever, brought to the actual notice of the owner of the land, and because of the nature of the land no presumption of notice of user should arise therefrom. Likewise, if there be actual notice of user and no objection thereto by the owner it would seem the more logical and just to indulge in a presumption that such use was permissive. See Schroer v. Brooks, 204 Mo.App. 567, 224 S.W. 53, l.c.

56. But in the case at bar, the land over which plaintiffs claim an easement is located in a well settled county, and not part of an extensive, unimproved, uninhabited area. Henry Bray who purchased the Ocsody farm in 1908 lived on the place prior to selling it to John P. Morisse in 1921. Thereafter Mr. Morisse lived on the farm and afterwards sold it to defendants in 1940. Mr. Ocsody testified he had lived on the farm for twenty-nine years.

The Fieser farm has been occupied and farmed for many years. Elmer Blaue went there in 1930 or 1931 to help with the threshing. Mr. Henry Helmich lived on the farm at the time. Herman Altemeyer was living there when defendants purchased their farm in 1940. The parents of plaintiff Henry J. Moravek purchased the farm in 1947. For three years thereafter the farm was rented to Zeno Angel. Thereafter Harry Moravek and his wife moved on to the farm. While living there he raised crops and maintained cattle on the farm. When he became ill in 1960 the farm was rented to Mr. Sickendick and Mr. Tegeler.

Plaintiff Henry J. Moravek purchased his farm in 1952. He raised cattle during the time his father operated the Fieser farm. He built a bungalow on his father's farm in 1954, but at the present time he has a mobile home on his own land. Plaintiff Fieser has lived on his land since he purchased it in 1967. Mr. Ocsody has raised cattle on his farm.

■ From the foregoing facts it would appear that this is not a case of an attempt to establish an easement over unproductive wasteland belonging to an absentee owner. It is true that the land is marginal, but we know of no authority holding that an easement by prescription may not be acquired over such land.

Defendants in their brief admit that the owners and occupants of the farms now owned by plaintiffs have used the Ocsody land for ingress and egress to their premises for many years. Their sole contention is that this use was in the beginning by permission and that there was no hostile use or claim of right to such use until the gates were erected in 1968. We do not believe there is merit to this contention. Whether the use was adverse or permissive in the beginning does not clearly appear from the evidence. But whether plaintiffs' predecessors in title acquired an easement over defendants' land prior to defendants' purchase in 1940 by grant or trespass, the weight of the evidence shows that an easement was acquired subsequent to said purchase. We reach this conclusion even though Mr. Ocsody testified that Mr. Altemeyer used the roadway from the county road with his permission.

■ To establish such an easement the following essential facts must be proved. First, used for the prescribed period; Second, that use was open, adverse, continuous and under a claim of right; Third, notice to the owner of the land of the use and the claim of right. All of these elements are present in the instant case.

■ There is no doubt that the use by plaintiffs was for the prescribed period. That the use was open and known by defendants was clearly established. The evidence shows that it was traveled at such times by the users as their convenience and business needs required, hence it must be considered continuous.

■ It is not necessary that there be shown an express claim of right in words, or that the adverse party expressly admit his knowledge of it. These facts may be inferred from the nature of the use and the situation of the parties. It is sufficient that the person who has allegedly established the easement acts in such a manner as clearly indicates he claims title to the easement. Hughes v. Boyer, 5 Wash.2d 81, 104 P.2d 760. Here the owners of the dominant estate graded the roadway, ditched it, and put gravel on it. It is extremely unlikely that they would have performed those acts absence a claim of right.

Mr. Ocsody voiced no objection to the use of the roadway. From that fact it is reasonable to infer that he would not have acquiesced in its use had he not felt conscious that the parties using the roadway had a right and title to an easement that could not be defeated. Rush v. Collins, 366 Ill. 307, 8 N.E.2d 659. It further appears that Ocsody consulted Mr. Altemeyer about the change in the course of the roadway, and helped Mr. Altemeyer make the change. This tends to show that Mr. Ocsody recognized the existence of an easement and the claim thereto by the owner of the dominant estate. Since the change was for the convenience of the landowner and by consent, the easement was not affected by it. Faulkner v. Hook, 300 Mo. 135, 254 S.W. 48.

■ After a consideration of the evidence in this case we are of the opinion that plaintiffs have met the burden of proof with respect to the existence of the alleged easement, and that the decision of the trial court should not be disturbed.

■ Under points relied on defendants charge that the judgment is vague, indefinite and unenforceable in that it does not define the roadway as to width and distance. This assignment preserves nothing for review since it is not carried forward and developed in the argument. Pate v. St. Louis Independent Packing Co., Division of Swift & Co., Mo.App., 428 S.W.2d 744; Kratzer v. King, Mo., 401 S.W.2d 405.

The judgment of the trial court is affirmed.

PER CURIAM.

The foregoing opinion by LYON ANDERSON, Special Commissioner, is adopted as the opinion of this court. The judgment is affirmed.

WOLFE, P. J., and BRADY and DOWD, JJ., concur.