C.W. NEALE, Janet Neale, Joe H. Hendricks, H. Marie Hendricks, Robert L. Magee and Rosemary Magee, Plaintiffs–Respondents,

v.

Margaret KOTTWITZ, Defendant–Appellant.

No. 15996.

Missouri Court of Appeals, Southern District, Division Two.

May 5, 1989.

Harold A. Kyser, of Butler, for defendant-appellant.

J. D. Baker, Jeffrey L. Dull, Baker & Dull, Osceola, for plaintiffs-respondents.

MAUS, Judge.

By their petition, the plaintiffs sought a declaration they had an easement by prescription for ingress and egress over the south 20 feet of 160 acres owned by the defendant. They also sought injunctive relief mandating the removal of obstructions and enjoining any further obstruction of the easement. The trial court granted the relief sought. The defendant states three points on appeal.

The evidence established the following uncontroverted facts. The defendant owns the Southwest Quarter of Section 35, Township 38, Range 26, St. Clair County. She purchased that tract in 1974. The Hyde brothers own the Northwest Quarter of Section 2, Township 37, Range 26, St. Clair County. This tract adjoins the said Southwest Quarter on the south. There is a county road that runs north and south along the west side of these two tracts.

In 1944, W.C. Davis, the grandfather of plaintiff C.W. Neale, and the plaintiffs' other predecessors in title purchased 599 acres (known as the "Forks Land") that adjoined said Southwest Quarter and Northwest Quarter on the east. The Forks Land lies in the forks of the Osage and Sac Rivers. At the time of trial, there remained an abandoned rock house and site of a former sawmill on that tract. The principal part of the Forks Land was taken for Truman Reservoir. However, the plaintiffs still own two irregular shaped tracts which adjoin said Southwest Quarter and Northwest Quarter on the east.

■ The defendant's first point is that the evidence is insufficient to support the trial court's finding the plaintiffs and their predecessors acquired an easement by prescription by using the roadway adversely for more than 45 years. To support this

point, the defendant argues only selected portions of the testimony. That argument is based upon assertions such as the following.

The Plaintiffs' evidence was that the only use of the proposed roadway was by plaintiff C.W. Neale's grandfather, who in the 1940's and 1950's used the road twice a year to check on property; that the road was used as access for a lumber operation in the late 1940's and crops grown on fields. These operations were on land no longer part of land owned by plaintiffs. The present owners had never used the roadway.

She also argues there was an absence of evidence of adverse use in recent years. She further emphasizes the "main roadway" only extended from the county road to the entrance of the once existing improvements on said Southwest Quarter. She also argues that plaintiff Neale took new co-owner Magee to defendant to obtain permission for Magee to use the road.

The following are merely examples of the evidence the defendant's argument fails to acknowledge. At one time two or more families lived on the Forks Land. A sawmill was operated on that tract until at least 1952. There was evidence that from 1918 to the time of the government taking, the tract was used for logging, pasturing cattle and farming. The road was used for those purposes. Until recently it was fenced on both sides. Two poured concrete culverts or small bridges are located near the west end of the road.

Witness Roy Smith testified he first used the road in 1918 to ride a horse to swim in Sac River. He helped load hogs over the road in 1950. He last drove a car over the road in 1958 or 1959 when he was working for the county ASC office to check on measurements on the Forks Land. Don Hyde testified that he was familiar with the area since 1952 or 1953. He observed farming and logging operations being conducted on the Forks Land since 1952. The people doing so used the road in question. He assumed that half of the road was on said Northwest Quarter. Witness Russell See had lived in the area during 1954 to 1970.

He personally used the road for three years in the early 1960's to farm a part of the Forks Land. The road was always open. All of the neighbors used it. Witness Alvin Speight was familiar with the road since 1946. He first used it in 1951 for fox hunting. For six or seven years he used the road about three times a year. He used it in hauling cattle in 1958 or 1959. He had also driven a tractor down the road for the purpose of brush hogging a portion of the Forks Land. Plaintiff Neale first used the road in 1946 when he accompanied his grandfather. The grandfather was farming a part of the Forks Land. Neale was gone during 1957 to 1960. However, after he returned the road was still there. It had deteriorated. Someone removed the fence along the north side of the road and brush grew up in the road, although a car could still be driven down the road. He still uses the road at least once a year.

The defendant testified people used the road with permission and without permission. She knew the road was there when she bought the Southwest Quarter in 1974. She acknowledged that in 1978 "[t]here was a roadway, but I didn't consider it a legal roadway." Her testimony presents an implication that she did not consider it legal because an easement was not recorded.

The principles by which evidence is to be measured to determine the existence of an easement by prescription are well established.

The elements that establish an easement by prescription have been outlined and considered in detail in countless decisions. See *Carpenter–Union Hills Cem. v. Camp Zoe, Inc.*, 547 S.W.2d 196 (Mo.App.1977); *George v. Dickinson*, 504 S.W.2d 658 (Mo.App.1974). The requirements have been summarized: 'An easement by prescription may be established by use which is shown to have been continuous, uninterrupted, visible and adverse for a period of ten years.' *Guerin v. Yocum*, [506 S.W.2d 46, 47 (Mo.App. 1974)]).

*Orvis v. Garms*, 638 S.W.2d 773, 776 (Mo. App.1982). Also see *Spence v. Wrobleski*,

603 S.W.2d 91 (Mo.App.1980). Further, "[w]here a use has been open, continuous, visible, and uninterrupted for a period of ten years, a presumption is raised that the use was adverse and under a claim of right and the burden is cast upon the landowner to show that the use was in fact permissive rather than adverse." *Burgess v. Sweet,* 662 S.W.2d 916, 918 (Mo.App.1983). Also see *Dalton v. Johnson,* 320 S.W.2d 569 (Mo.1959). "It is well established that permission given after a road easement is already established by adverse use has no legal effect." *Kirn v. Oehlert,* 625 S.W.2d 921, 923 (Mo.App.1981). Also see *Burgess v. Sweet,* supra.

"This judgment must be sustained unless there is no substantial evidence to support it, unless it erroneously declares or applies the law, or unless we firmly believe that it is against the weight of the evidence." *Brennan v. Missouri State Employees' Retirement System,* 734 S.W.2d 230, 232 (Mo.App.1987). This standard is to be applied not upon the basis of selected bits of testimony, but upon the basis of *all* the evidence. Considering all the evidence in the application of the above principles, there is ample evidence to sustain the judgment of the trial court. The facts are similar to those in *Auxier v. Holmes,* 605 S.W.2d 804 (Mo.App.1980), in which the court summarized:

> The evidence herein shows a continual use of the entire lane for purposes of planting and harvesting crops and carrying cattle, for a period of fifty years or more. The use was continual and travel occurred 'at such times by the users as their convenience and business needs required,' see *Moravek v. Ocsody,* 456 S.W. 2d 619, 625 (Mo.App.1970).

Id., at 810. The defendant's first point is denied.

■ By her second point, the defendant contends the prescriptive easement was abandoned. "To constitute an abandonment of the easement, the evidence must support (absent an expressed abandonment) an intent to abandon. Even failure to use will not by itself necessarily constitute an abandonment, see *Dalton v. John-* *son,* 320 S.W.2d 569 (Mo.1959) and *George v. Dickinson,* [504 S.W.2d 658 (Mo.App. 1974) ]." Id., at 810. There was no evidence to support an intent to abandon. There was evidence of continual use. The contention has no merit.

■ The defendant's third point is that "[t]he trial court erred in its ruling that an easement existed to 20 feet north of the center of the traveled portion of the purported roadway...." To support this point the defendant cites testimony of plaintiff Neale that he was uncertain of the location of the roadway. However, there was uncontroverted evidence the roadway was 30 feet wide. The defendant testified that at its west end, at its terminus with the county road, the roadway in question was entirely on the Southwest Quarter she owned. She said at the east end it was entirely on the Northwest Quarter owned by the Hydes. The relevant Corps of Engineers Segment Map introduced by the defendant shows the north boundary of the roadway to be on defendant's Southwest Quarter and run substantially parallel to the south line of that Southwest Quarter. An aerial photograph shows the same condition. If accepted by the trial court, this evidence would support the conclusion substantially all of the roadway was on the Southwest Quarter. The evidence must be reviewed favorably to the result reached. *Mueller v. Simmons,* 634 S.W.2d 533 (Mo. App.1982); Rule 73.01. When so viewed, it supports that conclusion. Under this evidence, the defendant cannot complain of a judgment that places only 20 feet of the roadway on her property. The point is denied and the judgment is affirmed.

FLANIGAN, P.J., and HOGAN, J. concur.