Ronald L. MOSS and Nell F. Moss,
Plaintiffs–Appellants,

v.

Gene WARD, Diane Welch and Vivian K.
Henson, Defendants–Respondents.

No. 18994.

Missouri Court of Appeals,
Southern District,
Division Two.

Aug. 8, 1994.

Christina L. Mell, L. Dwayne Hackworth, Piedmont, for plaintiffs-appellants.

Douglas R. Kennedy, Poplar Bluff, for defendants-respondents.

GARRISON, Judge.

Plaintiffs appeal from a judgment granting a prescriptive easement for a road (the road) located on their land. The issues involve the sufficiency of the evidence to support the judgment.

Plaintiffs and Defendant Vivian Henson (Vivian) are the owners of adjoining properties in Wayne County, Missouri. Plaintiffs' property consists of 140 acres and lies east of Vivian's 80–acre tract. Highway A, a paved county road, runs generally in an east-west direction through or abutting the southern portions of those properties. The gravel or dirt road which is the subject of this litigation is on Plaintiffs' land and extends north from its intersection with Highway A approximately 780 feet to a point where it turns west and crosses the boundary line between the properties. The distance between the property line and the west side of the road varies from approximately 57 feet at the south end to between 11 and 14 feet at other locations. There is also a deteriorated fence running north and south at the approximate location of the boundary line.

Vivian's property had been in her family since approximately 1874. A house originally occupied by Vivian's grandparents, known as the "old home place," was located near the north end of the road on Vivian's property. The house was later used as a hunting cabin by Vivian's brother for a few years, and Vivian's uncle, Lyle Moser, also lived there until his death in 1975. Vivian, who was 53 years old at the time of trial, could remember using the road to both walk and drive to the old home place from the time she was a child.

Vivian completed the purchase of the property from other family members in 1978. Although no one had lived in the old home place after her uncle's death, she continued to use the road to get to the property at least weekly, and other family members did the same. Vivian was of the opinion that she owned the road and accordingly never requested permission from anyone to use it. Additionally, she granted permission for other people to use the road for hunting purposes.

Plaintiffs acquired ownership of their land in 1969. Plaintiff Ronald Moss testified that he had been familiar with the road since 1947 or 1948 and knew that it had been used for access to the old home place until Lyle Moser died in 1975. He confirmed that after Vivian acquired the property she and her family used the road without requesting his permission to do so.

Vivian's property also contained a cabin (the cabin) which had been built by another uncle at an unspecified time and was used by him for four or five years until his death in 1966. The cabin was located near Highway A, and during the period that it was used, access was apparently provided by an entrance from the road.

In 1989, Defendant Gene Ward (Gene), Vivian's son, decided to place a mobile home at the location of the old home place which was torn down that year. His sister, Defendant Diane Welch, also wanted to place a mobile home near the cabin. The road had apparently deteriorated so that it contained deep ruts and brush or undergrowth on both sides. It was also too narrow for the mobile homes to be transported without scraping their sides. As a result, Gene obtained the services of a bulldozer to both clear places for the mobile homes and improve the road. There was a factual dispute about whether the road was widened during that process.

Plaintiffs then filed a quiet title suit which included the area between the fence and the east side of the road. They also sought to enjoin Defendants from further widening or improving the road, to require Defendants to return the road to its original condition, and to recover damages. Vivian filed a counterclaim by which she requested that she be declared the owner of the property between the property line and the east side of the road based on the theory of adverse possession. In the alternative, she requested a prescriptive easement for the road which was specifically described as being 12 feet in width. She also sought to enjoin Plaintiffs from interfering with the use of the roadway, as well as a judgment for damages.

The trial court quieted title in Plaintiffs but denied the other relief sought by them. It also declared that Defendants had a roadway easement by prescription for access to both the old home place and the cabin, enjoined Plaintiffs from erecting any barriers so as to close or prevent use of the road, and denied Vivian's request for damages.[1] Plaintiffs appeal those portions of the judgment establishing a prescriptive easement and setting its width at 12 feet.

■ Review of this court-tried case is pursuant to Rule 73.01(c), V.A.M.R., as construed in *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976), which requires that we affirm the judgment unless there is no substantial evidence to support it, unless the judgment is against the weight of the evi-

---

1. No issue is raised on this appeal concerning the fact that the judgment granted prescriptive easements to Defendants Gene Ward and Diane Welch although they requested no relief. Likewise, there is no issue concerning whether the easement was one which was appurtenant to Vivian's property as opposed to one in gross and therefore whether it created a personal right or was merely appurtenant to the land. *See Hodges v. Lambeth,* 731 S.W.2d 880, 882 (Mo.App.E.D. 1987), and *Three-O-Three Investments, Inc. v. Moffitt,* 622 S.W.2d 736, 739 (Mo.App.W.D. 1981).

dence, or unless the trial court erroneously declared or applied the law. If the evidence consists of contradicted and conflicting testimony, this court defers to the trial court which has the opportunity to observe the witnesses and assess their credibility. *Auxier v. Holmes*, 605 S.W.2d 804, 805–806 (Mo. App.W.D.1980).

■ A roadway easement by prescription over the land of another may be acquired by a use which has been shown to have been continuous, uninterrupted, visible and adverse for a period of at least ten years. *Neale v. Kottwitz*, 769 S.W.2d 474, 475 (Mo. App.S.D.1989). The ten-year prescriptive period can be created by tacking together the use of successive owners. *Homan v. Hutchison*, 817 S.W.2d 944, 947 (Mo.App. W.D.1991). Because the law does not favor prescriptive easements, the necessary elements for their establishment must be proven by clear and convincing evidence. *Id.* at 947–48.

In their first point relied on, Plaintiffs contend that the trial court erred in finding that Defendants were entitled to an easement over the roadway to Defendant Gene Ward's residence at the old home place and to the cabin because there was insufficient evidence of continuous use during the prescriptive period or that any such use was adverse with notice to the owner.

■ The concept of continuous use as an element of a prescriptive easement does not require use at any particular intervals. Rather, use "at such times by the users as their convenience and business needs required" is sufficient. *See Moravek v. Ocsody*, 456 S.W.2d 619, 625 (Mo.App.E.D.1970); *Auxier v. Holmes*, 605 S.W.2d at 810. Although the use need not be constant, there should be no break in the essential attitude of the mind required for adverse use. *Whittom v. Alexander–Richardson*, 851 S.W.2d 504, 508 (Mo. banc 1993). " 'Continuous enjoyment' simply means that the claimant must exercise the use as frequently as convenience or necessity requires consistent with the character of the property and the nature of the easement asserted." *White v. Ruth R. Millington Living Trust*, 785 S.W.2d 782, 785 (Mo.App.S.D.1990) (quoting from *Bruce &*

*Ely, The Law of Easements and Licenses in Land*, Para. 5.05[1], p. 5–24 (1988)).

## THE EASEMENT FOR ACCESS TO THE OLD HOME PLACE

■ In the instant case, the evidence indicated that the road had been the only means of ingress and egress for the old home place. While there was no direct evidence as to when that structure was built, Vivian testified that she could remember the road being used for that purpose for at least 47 years. Her brother testified that he used the road as a child on a daily basis to get to his grandparents' place. Plaintiff Ronald Moss testified that he knew the road had been used since 1947 or 1948. Thereafter, when Vivian acquired title in 1978, she used the road as the sole means of access to the old home place, which occurred at least on a weekly basis until it was torn down in 1989. This evidence was sufficient for the court to find a continuous use which satisfies that element of a prescriptive easement.

■ Plaintiffs also contend that the evidence was insufficient to establish that the use was "adverse." That element of a prescriptive easement has been described as:

> The adverse use of land with respect to the creation of an easement by prescription is one which does not recognize in those as against whom it is claimed to be adverse any authority either to prevent or permit continuance of the use. It is the nonrecognition of the authority at the time the use is made which determines whether the use is an adverse one.

*McIlroy v. Hamilton*, 539 S.W.2d 669, 673 (Mo.App.E.D.1976).

In the instant case, there was evidence from which the trial court could find that the road had been used as access to the old home place for well over 40 years and that that use had been visible, continuous and uninterrupted. Vivian testified that she believed she owned the road and at one time had maintained a gate at its entrance onto Highway A. The evidence indicated that the road had been used without permission being sought from anyone.

■ Where a use has been open, continuous, visible and uninterrupted for a period of longer than ten years, a presumption arises that the use was adverse and under a claim of right and the burden shifts to the landowner to show that the use was in fact permissive. *Homan v. Hutchison,* 817 S.W.2d at 948; *Neale v. Kottwitz,* 769 S.W.2d at 476; *Gill Grain Co. v. Poos,* 707 S.W.2d 434, 437 (Mo.App.W.D.1986); *Burgess v. Sweet,* 662 S.W.2d 916, 918 (Mo.App.E.D. 1983). In the instant case, Plaintiffs presented no evidence that use of the road was with permission as opposed to being under a claim of right.

■ Plaintiffs contend, however, that the "wild lands" exception applies so as to create a presumption of permissive rather than adverse use. Under that exception, a presumption that use was adverse and without permission does not apply to certain types of land variously described as "wild, unfenced, open woods" (*Cook v. Bolin,* 296 S.W.2d 181, 187 (Mo.App.S.D.1956)); "wild, rough land ... not used for either cultivation or pasture" (*Burnett v. Sladek,* 251 S.W.2d 397, 398 (Mo.App.E.D.1952)); and "unfenced and unoccupied lands which are parts of vast areas of undeveloped territory" (*Moravek v. Ocsody,* 456 S.W.2d at 624).

The "wild lands" exception, however, is a theory which Plaintiffs did not raise in the trial court. In addition, the exception has been held to be inapplicable under circumstances where, as here, permission to use the road was not solicited or granted and the owner had actual notice of its use. See *Carpenter–Union Hills Cemetery Assn. v. Camp Zoe, Inc.,* 547 S.W.2d 196, 202 (Mo. App.S.D.1977). Other circumstances apropos to this case have been cited by Missouri courts in deciding that the "wild lands" exception did not apply. See *Cramer v. Jenkins,* 399 S.W.2d 15, 18 (Mo.1966), where there were visible markings of the roadway and a county road abutted the property; and *Behen v. Elliott,* 791 S.W.2d 475, 476 (Mo. App.E.D.1990), where the court noted that the roads were "defined travelways in existence for more than forty years." The presumption of adverse use was not, therefore, defeated by application of the "wild lands" exception in the instant case.

### THE EASEMENT FOR ACCESS TO THE CABIN

■ Plaintiffs also appeal that portion of the trial court's judgment imposing a prescriptive easement for ingress and egress for the cabin.[2] The record does not indicate the exact location of the cabin with reference to Highway A or the property line. It was only described as being close to Highway A and in the southeast portion of Vivian's property. The trial court's judgment imposes a prescriptive easement to the cabin over the south 108.7 feet of the road and, in addition, a 12–foot wide strip, ten feet in length, from the west edge of the road to the property line, which we presume is intended as an entrance to the cabin. Other provisions of the judgment could be interpreted as also imposing an easement for access to the cabin over the entire area lying west of the road between Highway A and the south edge of that entrance.

The record, however, reflects no substantial evidence supporting the imposition of a prescriptive easement across any portion west of the road as an entrance onto Vivian's property for access to the cabin. According to the evidence, the cabin was built by Vivian's uncle and he lived there four or five years until his death in 1966. No one lived there again until November 1992 when another of Vivian's daughters moved into it. There was an opening in the fence to get to the cabin from the road, but there was no evidence to support a finding as to its specific location or that it had been used for a continuous period of ten years or more under circumstances which would cause that use to ripen into a prescriptive easement. That portion of the judgment purporting to impose an easement on Plaintiffs' property west of the road for an entrance to the cabin must, therefore, be reversed.

---

2. No issue is made of the fact that Vivian's counterclaim did not specifically request an easement for an entrance from the road to the old cabin.

It requested an easement over the road which intersected her property only at the north end.

## ISSUES RELATING TO WIDTH OF THE EASEMENT

In their second point, Plaintiffs contend that there was insufficient evidence to support that portion of the judgment setting the width of the easement at 12 feet. Because we have already determined that there was insufficient evidence to support the imposition of an easement for an entrance to the cabin from the road as opposed to the old home place, we need not discuss that portion of the point further.

The extent of a prescriptive easement is determined by the character and extent of its use during the prescriptive period. *Tadlock v. Otterbine,* 767 S.W.2d 366, 368 (Mo.App.S.D.1989). In the instant case, the evidence with respect to the width of the roadway was conflicting. Plaintiff Ronald Moss testified that the work on the road in 1989 changed it from eight feet wide to 16 to 30 feet wide in places. After the road work was performed, however, a survey was conducted which demonstrated that the road was 12 feet wide. Vivian testified that the road was no wider now than it was before. Gene Ward testified that prior to the road improvement, it was a one-lane road averaging 10 to 12 feet in width and that it had not been widened. Another witness who used the road in the early 1980's testified that the road is no wider now than it was then.

The trial court found that there had been no alteration of the road easement as to width. As indicated earlier, where the evidence is contradictory and conflicting, we defer to the trial court's opportunity to view the witnesses and assess their credibility. *Auxier v. Holmes,* 605 S.W.2d at 805–806. Conflicts in evidence are for the trial court to resolve and the facts must be taken in accordance with the result reached. *Trenton Trust Co. v. Western Surety Co.,* 599 S.W.2d 481, 483 (Mo. banc 1980). The trial court was entitled to, and apparently did, believe the evidence supporting this portion of the judgment.

The judgment is reversed to the extent that it grants an easement west of the road for an entrance to the old cabin. In all other respects it is affirmed.

FLANIGAN, P.J., and CROW, J., concur.