TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-01-00390-CR






Horace Lee Caruthers, Appellant



v.



The State of Texas, Appellee







FROM THE DISTRICT COURT OF WILLIAMSON COUNTY, 368THJUDICIAL DISTRICT


NO. 01-074-K368, HONORABLE BURT CARNES, JUDGE PRESIDING







 Appellant Horace Lee Caruthers appeals his conviction for possession of a controlled
substance, namely cocaine, with the intent to deliver in an amount of four grams or more but less
than two hundred grams. The jury found appellant guilty and assessed his punishment at thirty-one
years' imprisonment and a fine of $10,000. The jury found a deadly weapon was not used or
exhibited during the commission of the offense as alleged, and further acquitted appellant of the
offense of possession of a firearm by a felon as alleged.


Point of Error


 Appellant advances a single point of error. He contends that the trial court erred in
overruling his pretrial motion to suppress evidence. We will affirm the judgment of conviction.


Background


 Appellant filed a pretrial motion to suppress "any tangible evidence seized in
connection with the case" arising out of his warrantless arrest and in violation of the Fourth, Fifth,
Sixth, and Fourteenth Amendments to the United States Constitution and article I, sections nine, ten,
and nineteen of the Texas Constitution.

 The trial court conducted a pretrial hearing on the motion to suppress. See Tex. Code
Crim. Proc. Ann. art. 28.01(6) (West 1989). It was acknowledged that the arrest and search were
warrantless, so the State accepted the burden of going forward with the evidence. Detectives Rudy
Vicente Gonzalez and David Garrett of the Taylor Police Department testified that on the night of
March 3, 2001, they were on duty together with Corporal Dan Ramsey of the same department. They
encountered a confidential informant who told them that Harold Caruthers was at 516B. Lenora
Street, about five blocks away, in a brown rag or cloth topped automobile with a large hood
ornament. The informant stated that he had personally seen a large amount of crack cocaine at the
location. As Detective Garrett recalled it, the confidential informant told the officers Caruthers had
possession of the bag of crack cocaine and was selling it from the location given. The confidential
informant had furnished reliable and trustworthy information to Detective Gonzalez in at least three
previous narcotic cases. Detective Garrett knew appellant and his car as he had handled appellant
on a felony case, and he knew appellant had been recently released from the resulting felony
conviction. The officers knew that the address given was in a residential district that was "a high
narcotics trafficking area." Garrett had been previously assaulted when making an arrest in the
Lenora Street area. He had been present on another occasion when officers were outnumbered and
surrounded by a crowd in the area while awaiting the issuance of a search warrant.

 In a marked police vehicle, the three officers drove to 516B. Lenora Street. They
drove past the address, observed the car as described by the informant, turned around, drove back,
and parked. The brown car was in the driveway but headed towards the street. As the officers exited
the police vehicle, a man later identified as appellant got out of the driver's side of the brown Pontiac
car, looked at the police officers, and walked away at a fast pace--almost a run. Detective Garrett,
who knew appellant, called to him and told him to return to the car. Appellant complied. Detective
Gonzalez then frisked appellant for weapons for the officers' safety. In the patdown, Gonzalez found
no weapons or narcotics. The time was approximately 11:23 p.m. Gonzalez described the scene as
dark. For safety purposes, he shined a flashlight into the front windshield of appellant's car to
determine if any one was in there. He found no one in the car but observed a handgun on the floor
board protruding from under the driver's seat. Detective Gonzalez announced his observation, and
Detective Garrett responded that appellant had been convicted as a felon and it was still within the
five-year period in which felons are prohibited from possessing firearms. (1) The officers checked
immediately by police radio and determined that appellant had indeed been convicted of a felony and
the fifth anniversary of his release from that conviction had not been reached. The officers then
made a warrantless arrest of appellant on the basis of a felon in possession of a firearm committed
in their presence. The brown car was opened. Detective Gonzalez revealed that the other officers
found in the front compartment area of the car the loaded handgun, and $220 in cash. In the
unlocked glove compartment Detective Garrett discovered a bag containing a substance later shown
to be 19.3 grams of crack cocaine. Gonzalez took custody of all the items found in the front
compartment of appellant's car. Appellant was also arrested for possession of a controlled
substance.

 Appellant's two sisters testified at the suppression hearing. Lucinda Caruthers stated
that she lived at 516A. Lenora at the time in question; that she arrived home from work at 10:45
p.m.; that Jeffrey Kokomo, Randall Bradburg, and an eighteen- or nineteen-year-old female were in
the car with her brother but they fled when the police officers arrived; that the officers pulled
appellant from his car; that she did not see the officers use flashlights; and that no one could see
through the windshield of her brother's car. Michelle Caruthers testified that she lived at 516B.
Lenora Street with her children; that appellant stayed there "sometimes"; that she got home from
work and left about 10:30 p.m. to visit a friend on Lenora Street; that she received a telephone call
and returned home to find appellant in a patrol vehicle, and the officers using flashlights in
appellant's car; and that the officers searched her home, stating they were looking for individuals
who had fled from the car. At the conclusion of the suppression hearing, the trial court denied
appellant's motion to suppress the evidence seized.

 At the trial on the merits, the parties consensually relitigated the suppression issue. 
See Rachel v. State, 917 S.W.2d 799, 809 (Tex. Crim. App. 1996). (2) Appellant had an article 38.23
charge submitted in the trial court's instructions. See Tex. Code Crim. Proc. Ann. art. 38.23 (West
Supp. 2002). By their verdict, the jury rejected appellant's contention.


Standard of Review


 A pretrial motion to suppress evidence is nothing more than a specialized objection
to the admissibility of evidence. Galitz v. State, 617 S.W.2d 949, 952 n.10 (Tex. Crim. App. 1981);
Mayfield v. State, 800 S.W.2d 932, 935 (Tex. App.--San Antonio 1990, no pet.). The standard of
review of a trial court's ruling on a motion to suppress evidence is an abuse of discretion. Villarreal
v. State, 935 S.W.2d 134, 138 (Tex. Crim. App. 1991); Guevara v. State, 6 S.W.3d 759, 762 (Tex.
App.--Houston [1st Dist.] 1999, pet. ref'd). At the suppression hearing, the trial court is the sole
trier of fact, and the judge of the credibility of the witnesses and the weight to be given to their
testimony. State v. Ross, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000); Villarreal, 935 S.W.2d at
138. The trial court is free to accept or reject the testimony of any witness. Meek v. State, 790
S.W.2d 618, 620 (Tex. Crim. App. 1990); see also Allridge v. State, 850 S.W.2d 477, 492 (Tex.
Crim. App. 1991). In the absence of findings of fact, we presume that the trial court impliedly found
facts necessary to support its ruling. State v. Johnson, 896 S.W.2d 277, 280 (Tex. App.--Houston
[1st Dist.] 1995), aff'd, 939 S.W.2d 586 (Tex. Crim. App. 1996); State v. Davis, 991 S.W.2d 882,
883 (Tex. App.--Houston [1st Dist.] 1999, no pet.). Generally, on appeal, we review the record and
all reasonable inferences therefrom in the light most favorable to the trial court's ruling. We sustain
that ruling if it is correct on any theory of law applicable to the case. Villarreal, 935 S.W.2d at 138.

 That being said, we must keep in mind that while appellate courts should afford
almost total deference to a trial court's determination of historical facts supported by the record, the
appellate court reviews de novo the application of the law to the facts. See Guzman v. State, 955
S.W.2d 85, 87 (Tex. Crim. App. 1997). Appellate courts may review de novo "mixed questions of
law and facts" that do not require evaluation of credibility and demeanor of the witnesses. Id. 
Normally, when testing the legality of "stops and frisks" and searches, we review de novo the trial
court's determination of reasonable suspicions and probable cause as a mixed question of law and
fact. Id.


Reasonable Suspicion


 The United States Supreme Court has held that an officer without probable cause to
believe that an individual has engaged in criminal conduct is nevertheless sometimes permitted by
the Fourth Amendment to detain the individual for certain investigative purposes. Adams v.
Williams, 407 U.S. 143, 146-47 (1972); Terry v. Ohio, 392 U.S. 1, 21 (1968). These detentions are
frequently referred to as "Terry stops" or a "stop and frisk" when conducted by law enforcement
personnel. Carmouche v. State, 10 S.W.3d 323, 328 (Tex. Crim. App. 2000).

 In Illinois v. Wardlow, 528 U.S. 119 (2000), the Court stated:


In Terry, we held that an officer may, consistent with the Fourth Amendment,
conduct a brief investigative stop when the officer has reasonable, articulable
suspicion that criminal activity is afoot. 392 U.S. at 30. While "reasonable
suspicion" is a less demanding standard than probable cause and requires a showing
considerably less than preponderance of evidence, the Fourth Amendment requires
at least a minimal level of objective justification for making the stop. United States
v. Sokolow, 490 U.S. 1, 7 (1989). The officer must be able to articulate more than
an "inchoate and unparticularized suspicion or 'hunch'" of criminal activity. Terry,
supra, at 27.



Wardlow, 528 U.S. at 123-24.

 Reasonable suspicion, like probable cause, cannot be reduced to "a neat set of legal
rules." United States v. Sokolow, 490 U.S. 1, 7-8 (1989). Reasonable suspicion must be determined
by looking at the totality of the circumstances--the whole picture. Id.; see also Alabama v. White,
496 U.S. 325, 328-29 (1990); United States v. Cortez, 449 U.S. 411, 417 (1981); Carmouche, 103 
S.W.3d at 328; Woods v. State, 956 S.W.2d 33, 38 (Tex. Crim. App. 1997).

 In order to constitute reasonable suspicion, the information need not be within the
first-hand knowledge of the officer. Williams, 407 U.S. at 147. A tip from a known informant may
be sufficient. In the instant case, the tip came from a reliable confidential informant who had given
Detective Gonzales information in the past about narcotic cases which had proven to be correct and
trustworthy. The informant identified appellant by name, described appellant's car, gave appellant's
location as five blocks away, and reported that he (informant) had personally seen appellant in
possession of cocaine which appellant was selling from the described car. Detective Garrett knew
appellant, knew appellant's car, and knew appellant was a convicted felon. In addition, the officers
knew that the location in question was a heavy narcotic trafficking area and they would be venturing
into that area at night. Detective Garrett had previously been assaulted in the area while making an
arrest.

 Upon arriving at 516B. Lenora, the officers saw appellant exit the brown automobile
described, look at the officers and move away from them at a fast pace. In Wardlow, 528 U.S. at
124-25, the United States Supreme Court agreed that unprovoked flight upon noticing police is not
necessarily indicative of wrongdoing, but certainly suggestive of such when coupled with the
relevant characteristics of the location in which the suspect is encountered. Such factors (moving
away from the police in a heavy narcotic trafficking area) are entitled to consideration by officers
in determining whether to make an investigative stop. Id. 

 The detailed tip bore sufficient indicia of reliability. This, along with Detective
Garrett's personal knowledge of appellant and his car, and appellant's action upon the police arrival
in the area described, furnished reasonable suspicion for an investigative stop based on the totality
of the circumstances.

 Appellant was told to return to his car and he did. Detective Gonzales then conducted
a patdown search of appellant's outer clothing to determine if he was armed. Gonzales explained
that such action was for the safety of the officers. It was not unreasonable to conduct a limited
search for weapons under the circumstances. As explained by the testimony, the officers knew that
narcotics dealers are frequently armed and dangerous. See Carmouche, 10 S.W.3d at 330. The pat-down of appellant's person revealed no weapons or contraband.

 For his safety and that of the other officers, Gonzales turned to determine if others
were in appellant's car. It was dark and the interior of the car was not lighted. Gonzales shined a
flashlight through the front windshield and observed a handgun partially under the driver's seat. 
After confirming by radio Detective Garrett's assertion that appellant had a felony conviction and
had only been recently released, appellant was arrested for unlawful possession of a firearm by a
felon. See Tex. Pen. Code Ann. § 46.04 (West Supp. 2002). The warrantless arrest was for a felony
offense committed in the presence of a peace officer which is authorized by the Texas Code of
Criminal Procedure. See Tex. Code Crim. Proc. Ann. art. 14.01(a) (West 1977). The facts also
justified a warrantless arrest for unlawfully carrying a weapon which is a breach of the peace. Id.;
Turner v. State, 901 S.W.2d 767, 771 (Tex. App.--Houston [14th Dist.] 1995, pet. ref'd). The
officers then searched the front passenger compartment of appellant's vehicle finding the handgun
observed, $220 in cash, and the 19.3 grams of crack cocaine in the unlocked glove compartment. 
Incident to the warrantless arrest of appellant, did Detective Gonzales have the right to search this
area of appellant's car?

 Warrantless searches are per se violations of the Fourth Amendment to the United
States Constitution's proscription of unreasonable searches unless they fall within one of the
specifically established exceptions. Mincey v. Arizona, 437 U.S. 385, 390 (1978). One recognized
exception to the Fourth Amendment's warrant requirement is that an officer may search the area
within the immediate control of an arrestee. Chimel v. California, 395 U.S. 752, 762-63 (1969). The
underlying rationale for the Chimel rule is the need to remove any weapons that the arrestee might
seek to use to resist arrest and to prevent the concealment or the destruction of evidence. Id. at 763. 
"Where the arrestee was the occupant of a vehicle, however, police had difficulty in determining
whether the passenger compartment was actually within the arrestee's reach." State v. Kelly, 965
S.W.2d 866, 868 (Tex. App.--San Antonio 1998, no pet.). In New York v. Belton, the United States
Supreme Court confronted the difficulty in the application of Chimel to searches of automobiles
(without the necessity of considering the automobile exception to the warrant requirement of the
Fourth Amendment). (3) 453 U.S. 454 (1981).

 In Belton, the Court stated:


While the Chimel case established a search incident to an arrest may not stray beyond
the area within the immediate control of the arrestee, courts have found no workable
definition of 'the area within the immediate control of the arrestee' when that area
arguably includes the interior of an automobile and the arrestee is its recent occupant. 



Id. at 460.

 The Court then held that when an officer makes a lawful custodial arrest of the
occupant of an automobile, the officer may conduct a contemporaneous search of the passenger
compartment of that automobile. Id. Belton defined the passenger compartment of an automobile
as being within the hypothetical immediate control of an occupant or recent occupant of the vehicle. 
Kelly, 963 S.W.2d at 869. A Belton-type vehicular search applies only when there has been a lawful
custodial arrest of the occupant or recent occupant of a vehicle. See Gauldin v. State, 683 S.W.2d
411, 414 (Tex. Crim. App. 1984).

 Belton eliminated the officer's need to determine what constitutes the area within the
arrestee's reach when the area includes the interior passenger compartment of a vehicle and the
arrestee is its recent occupant. Belton did not, however, address who is a "recent occupant" for
purposes of being subject to a Belton-type vehicular search rather than a Chimel-type search. See
Kelly, 963 S.W.2d at 869. Most Texas cases involving a Belton search concern an arrestee who was
a direct occupant of the vehicle when stopped or approached by the police. Id.

 In determining whether appellant was a recent occupant of his automobile at the time
of his arrest, we examine factors such as his temporal and spatial proximity to the vehicle. See
Gauldin, 683 S.W.2d at 414. We also examine the record to determine if there is evidence of flight
or an indication that appellant quickly exited his vehicle in an attempt to avoid contact with the
police. Kelly, 963 S.W.2d at 869; Pettigrew v. State, 908 S.W.2d 563, 570 (Tex. App.--Fort Worth
1995, pet. ref'd).

 In reviewing the record without reiterating the facts, we conclude that the factors are
sufficient to show that appellant was a recent occupant of his vehicle and that the Belton-type search
incident to the warrantless arrest was proper. The fruits of that search were admissible into evidence. 
We are of the opinion that the same conclusion could be reached under Michigan v. Long, 463 U.
S. 1032 (1983), where the protective search of the passenger compartment for weapons during an
investigative detention was held valid and reasonable under the principles articulated in Terry.

 Appellant has cited article I, sections nine, ten, and nineteen of the Texas
Constitution. However, appellant has not offered argument, cited authorities, or given any reason
why the state constitution confers greater protection than the federal constitution. Under these
circumstances, appellate courts will not normally address state constitutional issues. See Hall v.
State, 67 S.W.3d 870, 874 (Tex. Crim. App. 2002). Any state constitutional issue in this case was
not adequately briefed. See Brooks v. State, 990 S.W.2d 278, 288 (Tex. Crim. App. 1999); Muniz
v. State, 881 S.W.2d 238, 251-52 (Tex. Crim. App. 1993).

 Appellant argues that from the totality of the circumstances, the police did not have
justification for the stop and his detention. "More specifically, there is nothing in the record
demonstrating that the police personally knew the C.I. [confidential informant] or that the C.I. had
provided information in the past. . . . Nor is there any concrete evidence in the record that appellant
was committing a crime or acting suspicious when the police approached . . . ." We find the
argument to be without merit under this record. (4) 

 The trial court did not abuse its discretion in overruling the pretrial motion to suppress
as contended in the sole point of error.

 The judgment is affirmed.



 

 John F. Onion, Jr., Justice

Before Justices Kidd, Patterson and Onion*

Affirmed

Filed: August 30, 2002

Do Not Publish


* Before John F. Onion, Jr., Presiding Judge (retired), Court of Criminal Appeals, sitting by
assignment. See Tex. Gov't Code Ann. § 74.003(b) (West 1998).
1.   Section 46.04 of the Texas Penal Code provides in pertinent part:


(a) A person who has been convicted of a felony commits an offense if he
possesses a firearm:


 (1) After conviction and before the fifth anniversary of the person's release
from confinement following conviction of the felony or the person's
release from supervision under community supervision, parole, or
mandatory supervision, which ever date is later . . . .


Tex. Pen. Code Ann. § 46.06(a)(1) (West Supp. 2002). The current version is cited for convenience.
2.   As an exception to the general rule, when the parties consensually relitigate the suppression
issue at trial, the trial evidence as well as the evidence at the suppression hearing may be considered
in determining error in the ruling on the motion to suppress evidence. See Rachel v. State, 917
S.W.2d 799, 809 (Tex. Crim. App. 1996).
3.   See New York v. Belton, 453 U.S. 454, 463 (1981) (Rehnquist, C.J., concurring).
4.   Interestingly, appellant's trial counsel at the suppression hearing developed, over the
State's objection, that in three cases the confidential informant had provided true and correct
information about narcotics to the police in the past, including one where he also made a controlled
purchase of narcotics from a dealer.