John ORVIS and Cheryl Orvis, Walter Trill and Ivy Trill, and Grace Judy, **Plaintiffs-Appellants,**

v.

Frederick GARMS and Hattie Garms, and Henry Garms and Susan Garms, **Defendants-Respondents.**

No. 12572.

Missouri Court of Appeals, Southern District, Division Two.

Aug. 24, 1982.

Randall R. Sutter, Lebanon, for plaintiffs-appellants.

James E. Baldwin, Donnelly, Baldwin & Wilhite, Lebanon, for defendants-respondents.

MAUS, Chief Judge.

In this action the plaintiffs seek to establish easements for ingress and egress along the route of a road across property owned by the defendants. They also seek the removal of gates and installation of cattle guards. The trial court denied those requests. Their petition sought such relief on a variety of bases varying from public road to prescription. However, before this court the plaintiffs Judy and Orvis rest their claim upon prescription and the plaintiffs Trill upon necessity.

Review of this case does not hinge upon the opportunity of the trial court to have judged the credibility of the witnesses. Rule 73.01. The testimony relative to the decisive issues is virtually without conflict. From the memorandum decision filed by the trial court it is clear that decision was not based upon a rejection of the undisputed testimony. Rather, that memorandum decision by clear inference demonstrates the court accepted that testimony but denied relief as a matter of law. A general outline of the salient facts follows.

The following is the geographic and historical background. Buck Earls owned 213 acres which was approximately 3960 feet north and south and east and west varied from 2015 on the north to 2538 feet at the widest point to 1658 feet on the south. It is bounded on the east by a slightly meandering public road. In July 1977 a survey was

made and plat prepared dividing by east-west division lines the Earls' property into five tracts which vary in size from 25 acres to 68 acres. They were numbered tracts 1 through 5 from north to south.

In April 1952, by a contract for deed, Ralph H. Judy and Grace A. Judy, his wife, bought the NW ¼ SW ¼, the SW ¼ SW ¼ and the SE ¼ SW of Section 20. That SE ¼ SW ¼ adjoined on the west the SW ¼ SE ¼ which was the center 40 acre tract of the Earls' property.

The road in question has the following general course. It leaves the public road and enters the southeast corner of what was the Earls' property. This is the southeast corner of tract No. 5. The road then meanders northwesterly and enters tract No. 4 approximately 300 feet east of the west line of tracts No. 4 and No. 5. It then angles northwesterly across the southwest corner of tract No. 4 and the northeast corner of the NE ¼ NW ¼ of Section 29 (a tract owned by one Haines). It enters the Judy property approximately 185 feet west of the southeast corner thereof.

The limited physical history of that road shown by the evidence is as follows. The road is a dirt and gravel well defined road. There was evidence that during the period in question it had been improved and maintained by graveling and frequent grading. It was in its present location in April 1952 when the Judys took possession of the property they purchased. Until the action of the defendants there was no obstruction on that road other than a cattle guard at the southeast corner of the Earls' property.

The house on the Judy property is located in its southeast corner. It served as the residence of Ralph Judy and Grace Judy and their family until his death in 1968. Grace Judy continued to reside in that house at the time of trial. At an undisclosed time Grace Judy conveyed 100 acres to her son Gerald Judy, retaining 20 acres where the home is located. Reserving a life estate, she conveyed that 20 acres to her son-in-law and daughter, plaintiffs John Orvis and Cheryl Orvis. In 1973 or 1974 they placed a mobile home near the house and have lived in it since that time.

From April 1952 to the time of trial the road was continuously used for ingress and egress to the Judy property for residential and agricultural purposes. There was also evidence the road was used and at times maintained by one Bill Agee who apparently lives or at least owns property beyond the Judy property. This included the removal of timber. There is no direct evidence concerning the origin of the road. In 1961 or 1962 a Mrs. Kennedy, who apparently lived in the house at the southeast corner of tract No. 5 put a strand of barbed wire across the road at that point. Ralph Judy drove right through it.

In November 1977 plaintiffs Trill bought tract No. 4. A gully runs north and south through tract No. 4, somewhat east of the center of that tract. In April 1978 they placed a mobile home on the west side of the gully and use it as their residence. Initially they reached that mobile home by traveling a distance on the road in question and then cutting generally north across tract No. 5. After the installation of the fences hereafter mentioned, they drove on that road through the gate between tracts No. 4 and No. 5. They presented evidence of unsuccessful attempts to build a road from their mobile home across the gully to the public road. They also presented evidence that it would cost $4,500 to successfully build such a road and of their inability to pay that price.

The defendants bought tract No. 5 in December 1978 and moved there in March 1979. They placed a mobile home near the house at the southeast corner of tract No. 5. Frederick Garms and Hattie Garms reside in the house and their son and daughter-in-law, Henry Garms and Susan Garms, live in the mobile home. The defendants acknowledge they saw the road in question when they bought tract No. 5. In October 1979 they fenced the perimeter of tract No. 5. They removed the cattle guard and placed

gates for the road where it entered at the southeast corner of tract No. 5 and where it crossed the fence between tracts No. 4 and No. 5. The plaintiffs sought to compel the removal of these gates. Instead, the trial court found that none of the plaintiffs had a right to use the road and adjudged they stop doing so and that the defendants could lock the gates.

The trial court determined the case upon the basis of individual personal rights of the parties. Plaintiff Grace Judy was denied a prescriptive easement because she did not prove the demonstrated use of the road was not permissive. The plaintiffs Orvis were denied a prescriptive easement because they had not used the road for the prescriptive period of 10 years and were not entitled to tack the prior use. The plaintiffs Trill were denied an easement because they did not demonstrate a sufficient necessity therefor. However, the claims of the plaintiffs are not asserted as easements in gross, but as easements appurtenant; one appurtenant to the Judy property and one appurtenant to the Trill property. *Kohlleppel v. Owens,* 613 S.W.2d 168 (Mo.App.1981). They will be so considered.

■ The contention of the defendants that the claims were not so asserted before the trial court is without foundation. The petition alleged the road was a free and public road for over 75 years and refers to the same as access to their properties. There was admitted in evidence, without objection, legal descriptions of a dominant tenement and a servient tenement and the use made of the road for the benefit of the dominant estate. "The existence of a dominant tenement resolves any doubt as to whether an easement appurtenant or an easement in gross was intended, as an easement in gross has no dominant tenement." *Three-O-Three Inv., Inc. v. Moffitt,* 622 S.W.2d 736, 739 (Mo.App.1981). Nor is there substance in the defendants' assertion there was no conveyance of an easement from Judy to the Orvises. Without objection Mrs. Judy testified in substance she

conveyed the dominant tenement to the Orvises. An easement appurtenant even though created by prescription passes with the transfer of the land, although not specifically mentioned in the transfer. *Beldner v. General Electric Company,* 451 S.W.2d 65 (Mo.1970). Certainly there is privity between those parties within the doctrine permitting tacking of use. *Guerin v. Yocum,* 506 S.W.2d 46 (Mo.App.1974).

■ The elements that establish an easement by prescription have been outlined and considered in detail in countless decisions. See *Carpenter-Union Hills Cem. v. Camp Zoe, Inc.,* 547 S.W.2d 196 (Mo.App. 1977); *George v. Dickinson,* 504 S.W.2d 658 (Mo.App.1974). The requirements have been summarized: "An easement by prescription may be established by use which is shown to have been continuous, uninterrupted, visible and adverse for a period of ten years." *Guerin v. Yocum,* supra, at p. 47. The proof presented in regard to the easement appurtenant to the Judy property meets those requirements. *Moravek v. Ocsody,* 456 S.W.2d 619 (Mo.App.1970).

The defendants argue the petition cannot support a finding of such an easement because it does not allege the pleaded 30 years of open, notorious, and continuous, under a claim of right, use of the road was adverse. This belated attack must fail. The petition did pray for a declaration of an easement by prescription. The allegations referred to, when considered in connection with the prayer, clearly carry the connotation of an adverse use. Further, the issue of an easement by prescription was clearly tried by the implied consent of the parties. Rule 55.33.

The defendants next argue that proof fails because there was no affirmative evidence the long standing use of the road was adverse. This argument is refuted by an endless line of cases. "However, *in the absence of some showing that the use was permissive in its origin,* it is well settled that when one claims an easement by pre-

scription and shows an open, continuous, visible, and uninterrupted use for the statutory period, the burden is cast upon the land owner to show that the use was permissive, rather than adverse, if the land owner claims that it was permissive." *Carpenter-Union Hills Cem. v. Camp Zoe, Inc.,* supra, at p. 200. Also see *Dalton v. Johnson,* 320 S.W.2d 569 (Mo.1959); *Kirn v. Oehlert,* 625 S.W.2d 921 (Mo.App.1981); *Gerst v. Flinn,* 615 S.W.2d 628 (Mo.App.1981). The defendants did not meet that burden. Nor was the above rule inapplicable because the servient land was "wild, waste, or unenclosed land." There was a residence on the Earls' property only a short distance from the road. Further, a cattle guard was maintained at the southeast corner of the Earls' property where the road left the public road. This would have been done only if at least the east side was enclosed. The Earls' property was not wild, waste, or unenclosed land within the meaning of the exception to the rule. *Carpenter-Union Hills Cem. v. Camp Zoe, Inc.,* supra. Also see *Moravek v. Ocsody,* supra.

The defendants' argument the easement must be denied because there was a failure of proof of notice of the use of the road to the owners of the servient estate is also without merit. The defendants acknowledged actual notice of the well defined road. *Guerin v. Yocum,* supra. In regard to their predecessors "[n]otice may be inferred from the circumstances and express notice is not necessary." *George v. Dickinson,* supra, at p. 662.

However, the fact there is an easement appurtenant to the Judy property for ingress and egress is not determinative of the right of the defendants to maintain gates across the road. The character and extent of that easement "is fixed and determined by the use under which it is gained." *Riggs v. City of Springfield,* 344 Mo. 420, 432, 126 S.W.2d 1144, 1149 (banc 1939). An adverse use may have been under such circumstances that the owner of the servient property may maintain gates. *Holian v. Guenther,*

471 S.W.2d 457 (Mo.1971). However, in this case, "[t]here is sufficient evidence to show that there were no gaps or gates for a long period of time sufficient to establish a prescriptive right without gaps or gates." *George v. Dickinson,* supra, at p. 664. Also see *Huter v. Birk,* 510 S.W.2d 177 (Mo. 1974); *Carpenter-Union Hills Cem. v. Camp Zoe, Inc.,* supra; *McDougall v. Castelli,* 501 S.W.2d 855 (Mo.App.1973).

During the period of adverse use demonstrated by the evidence a cattle guard was maintained at the junction with the public road. The petition sought the establishment of cattle guards. Under these circumstances it is appropriate that the owner thereof should be permitted to maintain cattle guards where the road crosses the perimeter of the servient estate. Under similar circumstances, the Supreme Court has determined, "[i]nasmuch as the cattle guards are for the purpose of keeping appellants' cattle within appellants' property, the trial court did not err in imposing the expense of their maintenance upon appellants." *Huter v. Birk,* supra, at p. 183. The cost of installing and maintaining such cattle guards in this case should be upon the defendants.

The fact there is an easement appurtenant to the Judy property is not per se determinative of whether or not that easement extends to the use of that property as a residence for Grace Judy and a mobile home thereon used as a residence for John Orvis and Cheryl Orvis and their family. As has been observed, the character and extent of a prescriptive easement is fixed and determined by the use under which it is gained. *Riggs v. City of Springfield,* supra. The prescriptive easement in this case was acquired by use for agricultural and residential purposes. For example, it has been held such an easement may not be properly used for an industrial purpose such as quarrying. *Stickle v. Link,* 511 S.W.2d 848 (Mo. 1974). The general topic is discussed in Annot., Easements of Way—Use, 5 A.L. R.3d 439 (1966). A test of whether or not

an additional use may be made of such an easement is that "if an additional use sought to be made of a way by prescription represents only a change in degree, as respects the original use or uses made of the way, it is not improper, but if it represents a change in quality it is impermissible." 5 A.L.R.3d § 6, p. 449. The test has also been stated to be whether or not the proposed use will cast a substantial new burden on the servient estate. *Firebaugh v. Boring*, 288 Or. 607, 607 P.2d 155 (1980). Without expressly adopting either test, and without precisely defining the limits of the easement in question, this court holds that it does encompass the use of the Judy property for agricultural purposes and the use of the house and mobile home as residences. Compare *Gaither v. Gaither*, 165 Cal.App.2d 782, 332 P.2d 436 (1958), in which the court said such an easement encompassed the use of the dominant property for a newly constructed rental house.

■ As stated, plaintiffs Trill seek to establish an easement by necessity. From neither the petition nor their briefs is it clear whether they base their claim upon the statute, § 228.340, or upon the common law doctrine. They are not entitled to prevail under the statute as their property adjoins a public road. *Seitz Packing & Mfg. Co. v. Quaker Oats Co.*, 343 Mo. 1059, 124 S.W.2d 1177 (1938); *Hollars v. Church of God of Apostolic Faith*, 596 S.W.2d 73 (Mo.App.1980).

The common law doctrine has been expressed: "The principle of law is of old standing, and well settled, that a grant of a way is presumed to have been made whenever land has been sold which is inaccessible except by passing over the land of the grantor, ... ." *Vossen v. Dautel*, 116 Mo. 379, 385, 22 S.W. 734, 735 (1893). A limitation upon that doctrine has been recently expressed. "A showing of 'strict necessity' as required by § 228.340, RSMo 1969 is not to be confused with the common law easement by strict necessity allowed only upon proof of prior unity of title and subsequent

deprivation of access to a public roadway." *Lewis v. Hilkerbaumer*, 599 S.W.2d 7, 8 (Mo.App.1980). That the Trills chose to locate their mobile home at a location from which it is difficult to reach the public road does not establish the required necessity. *Vossen v. Dautel*, supra; *Rice v. Wade*, 131 Mo.App. 338, 111 S.W. 594 (1908).

The judgment of the trial court against plaintiffs Trill and declaring there is no easement in the property of the defendants for the benefit of the property owned by plaintiffs Trill is hereby affirmed. The judgment of the trial court against plaintiffs Grace Judy and John Orvis and Cheryl Orvis and declaring that there is no easement in the property of the defendants for the benefit of the property owned by plaintiffs Grace Judy and John Orvis and Cheryl Orvis is reversed. The cause is remanded with directions to enter a judgment in favor of the plaintiffs Grace Judy and John Orvis and Cheryl Orvis and declaring and establishing an easement for ingress and egress for residential and agricultural purposes for the benefit of the property owned by plaintiffs Grace Judy and John Orvis and Cheryl Orvis, describing that property, in and over the property owned by the defendants, describing that property; and declaring that said easement is an existing road, extending across the property owned by the defendants, the center line of which shall be described by using the description of the center line in the Surveyor's Plat introduced as plaintiffs' Exhibit 1; and declaring the said easement includes, but is not necessarily limited to, the use of said property owned by said plaintiffs when used as a residence for Grace Judy and when used for a separate residence for John Orvis and Cheryl Orvis and their family and agriculture purposes; and declaring that the gates across said road at the perimeter of the property owned by the defendants shall be removed by and at the expense of the defendants and that the defendants and their successors may at their expense install and maintain cattle guards on said road where it crosses the perimeter of the property owned

by the defendants and that said cattle guards on said road shall be of sufficient width and type of construction to permit the unobstructed passage of traffic on said road for residential and agricultural purposes. The costs in the trial court and the costs of this appeal shall be assessed one-half against plaintiffs Trill and one-half against defendants.

PREWITT, P. J., and HOGAN and BILLINGS, JJ., concur.