**Curtis S. REINBOTT and Peggy Reinbott, Plaintiffs–Respondents,**

v.

**Hubert C. TIDWELL, Defendant–Appellant.**

**No. 26992.**

Missouri Court of Appeals,
Southern District,
Division One.

May 18, 2006.

Joy J. Ferguson, Hackworth, Hackworth & Ferguson, L.C., Piedmont, MO, for Appellant.

Jerry M. Merrell and Kristi J. Booker, Spain, Merrell & Miller, L.L.C., Poplar Bluff, MO, for Respondent.

GARY W. LYNCH, Judge.

The Circuit Court of Ripley County entered judgment in favor of Respondents Curtis S. Reinbott and Peggy Reinbott ("Reinbotts") and against Appellant Hubert C. Tidwell ("Tidwell"), declaring the existence of and enjoining interference with a prescriptive easement for ingress and egress to Reinbotts' property across Tidwell's property. The trial court additionally entered a monetary judgment in favor of Tidwell and against Reinbotts for damages due to Reinbotts' trespass on Tidwell's property outside of the prescriptive easement. Tidwell appeals, claiming that the injunctive relief granted against him by the trial court exceeds the scope of the declared prescriptive easement and that the trial court failed to take into account such excess in entering the damage judgment in his favor. We agree.

### 1) *Factual and Procedural Background*

Roger Reinbott, the uncle of Respondent Curtis Reinbott, acquired a 185–acre tract of land ("Reinbott Property") west of Highway K in Ripley County, Missouri, in 1972. Roger never resided on this property, but he and his family, including the Reinbotts, used the land regularly for hunting and camping. From 1976 until 1982 or 1983, Roger rented the land to James Engelken to pasture cattle. The Reinbotts acquired this property from Roger in 1999. Since 1972, Roger, James Engelken and the Reinbotts have gained ingress and egress to this property via the Highway K Bridge, previously known as Greenville Ford. The road ("Road") to access the Reinbott Property runs from the Highway K Bridge west along the north prong of the Little Black River. The Road is graveled and is about fifteen feet wide. The Road was in the same location and same condition in 1972 as it appears today, except for the addition of some gravel and the two bridges discussed later in this opinion.

In 1975 or 1976, Kenneth and Sharlie Knight acquired ownership of a 128–acre tract of land ("Tidwell Property") that is also situated west of Highway K and northwest of and adjacent to the Reinbott Property. Tidwell obtained ownership of a one-half interest in this property in 1999 when Kenneth and Sharlie Knight (Tidwell's sister) divorced. In August of 2001, Sharlie Knight deeded her remaining interest in the land over to Tidwell.

The North Prong of the Little Black River serves as a boundary line between the Reinbott Property and the Tidwell

Property. Tidwell's chain of title indicates that his property line extends to the middle of the Little Black River. The Reinbotts' chain of title indicates that they own the property to the west of the Little Black River. The Road runs generally east and west from the Highway K Bridge, going across the southern part of the Tidwell Property to the western bank of the North Prong of Little Black River, connecting to the Reinbott Property.

Before year 2000, traversing the Road from the Highway K Bridge to the Reinbott Property required fording a creek located essentially below the Highway K Bridge, driving across the southwest corner of the Tidwell Property and then fording the North Prong of the Little Black River.

■ During 2000, the Reinbotts decided to build a home by remodeling the barn on their property. They also decided to improve the access to their property via the Road by building a low water slab ("Creek Bridge")[1] over the creek that is on the state right-of-way for Highway K, near the Highway K Bridge, and by building a bridge ("River Bridge") over the north prong of the Little Black River which serves as the boundary between the Tidwell Property and the Reinbott Property.

In preparation for the construction of the River Bridge, the Reinbotts applied for and received a permit from the Corps of Engineers. This permit was conditioned upon the Reinbotts maintaining the bridge and using all reasonable efforts to help control erosion. In addition, they hired a bulldozer operator to cut down some trees and clear out an area to store bridge-building materials on the Tidwell Property near the bridge location. Brown's Nursery and Landscaping Service estimated it would cost $3,496.00 to restore the Tidwell Property to its condition before these trees were bulldozed out.

The Reinbotts commenced construction of the River Bridge in August of 2000. This construction consisted of laying six metal culverts side by side, perpendicular to the Road and parallel with the channel of the river, with approximately three culverts lying on each side of the center line of the channel. Each culvert is twenty feet long and, from the pictures admitted into evidence, appears to be approximately twenty-four inches in diameter. Concrete was then poured around and over the top of the culverts. The concrete is approximately eighteen feet wide at the base of the bridge and beveled upward to provide a roadway width of fourteen feet on the top of the bridge.

In the spring of 2001, the Reinbotts completed construction of the River Bridge by adding a concrete approach to each end of the bridge, both which are approximately the width of the roadway part of the bridge and extended out from each end of the bridge for about twenty feet. Following subsequent flooding and the resulting erosion, the Reinbotts restructured the bridge in 2002, by putting in aprons on each side of the approaches on both ends of the bridge. The concrete aprons fan out from the width of the bridge approaches on both sides of the

---

1. In his brief, Tidwell contends that the inclusion of the Creek Bridge in the injunctive relief granted by the trial court exceeded the scope of the Reinbotts' prescriptive easement in the Road. However, during oral argument, Tidwell's counsel candidly admitted that the Creek Bridge was located on the state right-of-way for Highway K and that the Tidwell Property's east boundary as stated in his deed is the western boundary of that state right-of-way. Having no property interest to protect in the location of the Creek Bridge, Tidwell lacks legal standing to challenge any action taken by the trial court related to the Creek Bridge.

river. The approach and aprons on Tidwell's side of the bridge combined are forty-eight feet wide. The aprons are necessary to prevent erosion.

In June of 2003, Tidwell blocked access to the Road. The Reinbotts responded by filing a four-count petition in the Circuit Court of Ripley County against Tidwell. Count I sought a declaration of an easement by necessity, Count II sought a declaration of a fifteen-feet-wide prescriptive easement for ingress and egress over the Road, Count III sought a temporary and permanent injunction prohibiting Tidwell from interfering with the Reinbotts' use of the Road, and Count IV sought monetary damages due to Tidwell's interference with their use of the Road. Tidwell counter-claimed, seeking in Count 1 to quiet his title to the Road and seeking in Count 2 monetary damages against the Reinbotts for their trespass upon his property.

Following a trial to the court, a judgment ("Judgment") was entered denying the Reinbotts any relief on Counts I (Easement by necessity) and IV (Damages) of their petition, granting the Reinbotts relief on Counts II (Prescriptive easement) and III (Injunction)[2] of their petition, denying Tidwell any relief on Count 1 (Quiet title) of his counter-claim, and granting Tidwell actual damages of $5,000.00 against the Reinbotts on Count 2 (Trespass) of his counter-claim.

The Judgment grants the Reinbotts a prescriptive easement ("Easement") fifteen feet in width[3] over the Road as a

**2.** The Judgment refers to this as "Count *II* of plaintiffs' Petition," but it is clear from the record and the docket entry of February 2, 2005 that the reference to "Count *II*" is a clerical error and that the trial court was in fact ruling on Count III of the plaintiffs' petition. This clerical error should be corrected upon remand.

**3.** Paragraph 2 of the Judgment provides:
The Court finds for the [Reinbotts] and against [Tidwell] on Count II of [Reinbotts'] Petition. It is therefore adjudged, ordered and decreed that the [Reinbotts] are entitled to have a prescriptive road easement fifteen (15) feet in width on and across the following described land:
[Legal description of Tidwell Property intentionally omitted].
Said roadway easement is more particularly described as follows:
A road easement 15 feet in width over and across a part of the Northeast Quarter of Section 9, Township 24 North, Range 3 East of the Fifth Principal Meridian, Ripley County, Missouri, being 7.5 feet on either side and perpendicular to the following described centerline, From the Northeast corner of said Quarter Section, measure South 00 degrees 26 minutes West, along and with the East line of said Quarter Section, a distance of 2414.0 feet; thence, South 89 degrees 34 minutes East a distance of 12.0 feet to the Westerly right-of-way line of

Highway "K" and the POINT OF BEGINNING; thence, South 74 degrees 03 minutes West a distance of 71.4 feet; thence, Westerly along and with a curve to the right (said curve having a radius of 76.7 feet and an included angle of 34 degrees 20 minutes) an arc distance of 45.9 feet; thence, North 71 degrees 37 minutes West a distance of 75.0 feet;[*] thence, Westerly along and with a curve to the left (said curve having a radius of 87.8 feet and an included angle of 45 degrees 26 minutes) an arc distance of 69.7 feet; thence, South 66 decrees 56 minutes West a distance of 94.5 feet; thence, South 58 degrees 25 minutes West a distance of 51.3 feet to the center of the North Prong of Little Black River, and there terminating.
Said road easement shall be a perpetual non-exclusive easement for automobile and pedestrian ingress and egress to and from a tract of land owned by [Reinbotts] and more particularly described as follows to wit:
[Legal description of Reinbott Property intentionally omitted].
* In comparing the survey plat "Detail" with the "Road Easement Description," both contained in Plaintiff's Exhibit 3, it appears that the call "thence, North 67 degrees 38 minutes West a distance of 157.3 feet" may have been omitted from the Road Easement Description and also from the Judgment. This apparent clerical mistake should be resolved and cor-

"perpetual non-exclusive easement for automobile and pedestrian ingress and egress to and from" the Reinbott Property. The Judgment then provides:

> [T]he Court permanently enjoins [Tidwell] from interfering with [Reinbotts'] right of ingress and egress along and upon the aforesaid roadway easement. It is further ordered that [Reinbotts] and [Tidwell] may erect and maintain a locked gate across said easement, provided that any such party electing to do so shall maintain such gate and lock in good repair and working order and provide the other party with a key to such lock. *[Reinbotts] are further ordered to permanently maintain the existing two (2) bridges erected by [Reinbotts] across the waterways intersecting said road easement in such a manner as to prevent erosion to defendant's property.* (Emphasis added).

The Judgment awarded Tidwell $5,000.00 for actual damages against the Reinbotts, but denied Tidwell's prayer for punitive damages and for attorney fees.

Tidwell appeals the Judgment.

### 2) *Standard of Review*

█ In this court-tried equity case, our review is controlled by Rule 84.13(d) [4] and the precepts of *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). *Schubert v. Trailmobile Trailer, L.L.C.*, 111 S.W.3d 897, 899 (Mo.App.2003). "The judgment will be affirmed unless there is no substantial evidence to support it, or unless it is against the weight of the evidence, or unless it erroneously declares or applies the law." *Pelligreen v. Wood*, 111 S.W.3d 446, 450 (Mo.App.2003).

█ "Under Rule 84.13(d), we defer to the trial court's opportunity to judge the credibility of witnesses." *Smith v. AF & L Ins. Co.*, 147 S.W.3d 767, 773 (Mo.App. 2004). "Although we generally defer to the trial court's findings of fact, we review conclusions of law without deference to the trial court." *Id.* "We independently evaluate whether the trial court properly declared or applied the law to the facts presented." *Ridgway v. TTnT Dev. Corp.*, 126 S.W.3d 807, 813 (Mo.App.2004).

### 3) *Tidwell's Claims of Trial Court Error*

Tidwell does not challenge the portion of the Judgment granting the Reinbotts the Easement. All five of Tidwell's points on appeal challenge the Judgment as it relates to the River Bridge. Point I contends that the inclusion of the entirety of the River Bridge in the injunction was error, in that, as a whole, it exceeds the scope of the Easement. Points II, IV and V contend that the trial court misapplied the law by including in the injunction those parts of the River Bridge located on the Tidwell Property outside of the Easement. Point III contends that the trial court erred by not assessing trespass damages necessary for Tidwell to remove the River Bridge.

### 4) *Discussion*

We will first address Tidwell's Points I, II, IV and V as they relate to the issuance of the injunction, and then we will address Point III as it relates to damages.

#### a) *Injunction*

The Reinbotts pleaded, proved and obtained a judgment for the Easement for the purpose of providing ingress and egress to their property which is fifteen

---

rected, if necessary, upon remand. *See* Rule 74.06(a).

4. All references to rules are to the Missouri Rules of Civil Procedure (2006), unless otherwise indicated.

feet wide. Neither Tidwell nor the Reinbotts challenge this part of the Judgment. The record is void of any evidence of any other interest, legal or otherwise, supporting a claim by the Reinbotts to any other part of the Tidwell Property outside of this fifteen-feet-wide easement.

The evidence is undisputed that the three culverts which make up part of the River Bridge on Tidwell's side of the river are twenty feet long and lay perpendicular to the Easement, which is fifteen feet wide. So, five feet of the length of three of these culverts lie outside of the Easement on the Tidwell Property. Likewise, the concrete bed or base of the River Bridge is eighteen feet wide on top of the Easement which is fifteen feet wide. Therefore, three feet of the bed of the bridge on the Tidwell side lie outside of the Easement. The approach on the Tidwell side of the bridge is approximately the same width of the bridge roadway, which is fourteen feet wide. This approach on the Tidwell side of the bridge is within the Easement. However, the aprons on each side of the approach fan out to a combined width, including the approach, of forty-eight feet. This leaves the undisputed fact that thirty-three feet of this combined width lies outside of the Easement on Tidwell's side of the bridge.

The Judgment's sole reference to the River Bridge is found in the last sentence of paragraph three granting the injunction. The trial court provided: "[Reinbotts] are further ordered to permanently maintain the existing two (2) bridges erected by [Reinbotts] across the waterways intersecting said road easement in such a manner as to prevent erosion to [Tidwell's] property." Tidwell claims that the inclusion of this sentence in the judgment granting an injunction as it applies to the River Bridge is a misapplication of the law by the trial court. Tidwell proffers two

theories in support of this contention. First, the River Bridge, in its entirety, overburdens the Easement as being beyond the scope of the easement (Tidwell's Point I). Second, because the Reinbotts do not have any property interest in the Tidwell Property outside of the fifteen-feet-wide Easement, there is no legal basis upon which to grant them the right to maintain any part of the River Bridge outside of the Easement (Tidwell's Points II, IV and V). In order to address these points, we first must determine the scope of the Easement.

### i) *Scope of the Easement*

"The character and extent of a prescriptive easement right is determined by the character and extent of the user during the prescriptive period." *Lacy v. Schmitz*, 639 S.W.2d 96, 100 (Mo.App. 1982). "It is a qualified right for a particular purpose." *Id.* "Therefore no different or greater use can be made of the prescriptive easement than the use under which it was gained." *Id.*

In the instant case, the latest date by which the prescriptive period could have concluded would have been August 18, 2003, the date of the filing of the Reinbotts' petition. Any use claimed to have been acquired by prescription would have had to commence ten years prior to that date. *Id.* at 99. Therefore, the character and extent of the Easement, or what is also referred to as the scope of the Easement, is circumscribed by the use initiated and occurring on and before August 18, 1993.

The only evidence concerning the use of the Tidwell Property by the Reinbotts and their predecessors on or prior to this date is that the Road was used for ingress and egress to the Reinbott Property for recreational and agricultural purposes. It contained no improvements other than the

addition of some gravel, and it had a width of not more than fifteen feet. Any other use of the Tidwell Property commenced by the Reinbotts after August 18, 1993 could not legally support a prescriptive easement, as it had not been maintained for the requisite prescriptive period. *Id.*

The Reinbotts made three changes in the use of the Road in 2000 following their decision to reside on their property. First, they enlarged the purpose for ingress and egress to their property from recreational and agricultural access to include residential access. Second, they constructed an improvement on the easement, *i.e.*, the River Bridge. And, third, the improvement so constructed encroached upon the Tidwell Property outside of the prescribed easement.

█ "Whether an additional use can be made of an easement is determined by whether the additional use represents only a change in the degree of use or whether it represents a change in the quality of the use." *Macios v. Hensley*, 886 S.W.2d 749, 752 (Mo.App.1994) (citing *Orvis v. Garms*, 638 S.W.2d 773, 778 (Mo.App.1982)). "If the change is in the quality of use[,] it is not permissible. Courts have also stated the test is whether the proposed use will cast a substantial new burden on the servient estate." *Id.* So, we must address each change to determine whether it is only a "change in the degree of use," which is permissible, or whether "it represents a change in the quality of the use," which is not permissible. Initially, we will briefly discuss the first change in use (to include residential access). Because the third change in use (by encroachment) is dispositive of this appeal, we will discuss it before we address the second change in use (by construction of an improvement on the Easement).

ii) *Change in Use for Residential Access*

Tidwell did not challenge in the trial court and does not challenge on this appeal the Reinbotts' use of the Easement for ingress and egress for residential purposes, in addition to the original purposes of recreation and agricultural access. It appears that Tidwell agrees that this is a change in the degree of use and is, therefore, permissible. *See Burgess v. Sweet*, 662 S.W.2d 916, 919 (Mo.App.1983).

iii) *Change in Use by Encroachment*

█ In Points II, IV and V, Tidwell attributes trial court error to the inclusion in the injunction contained in the Judgment of those parts of the River Bridge outside of the Easement. We believe these points have merit.

█ "If an easement holder, while lawfully on the servient land, exceeds his rights under the easement in either the manner or extent of his use, he becomes a trespasser to the extent of the unauthorized use." *Smith v. Woodard*, 15 S.W.3d 768, 773 (Mo.App.2000) (citing *Branson West, Inc. v. City of Branson, Mo.*, 980 S.W.2d 604, 607 (Mo.App.1998). Entering land with consent or license and exceeding the scope of that consent or license constitute a trespass. *Id.* "If the user of an easement exceeds his right, either in manner or extent of use, he is guilty of trespass[.]" *Id.*

The dimensional scope of the Easement includes a width of fifteen feet. It is undisputed that parts, including some of the culverts, the concrete base, and the aprons, of the River Bridge on the Tidwell Property exceed the width of the Easement. While paragraph two of the Judgment only grants the Reinbotts an easement fifteen feet in width, paragraph three of the Judgment grants the Reinbotts the right to "maintain the [River Bridge] ... in such a manner as to prevent erosion to

[Tidwell's] property." This injunction, therefore, gives the Reinbotts a right to maintain an improvement upon the Tidwell Property outside of the Easement. The Reinbotts have no legal right to alter or use any part of the Tidwell Property outside of the Easement. *See Smith*, 15 S.W.3d at 772; *Ridgway*, 26 S.W.3d at 435.

The Reinbotts attempt to justify their continuing trespass upon the Tidwell Property in three ways. First, they argue that "[t]he apron is a necessary part of the prescriptive easement, and the apron itself is not being used for ingress or egress, but simply exists to keep down erosion." However, they cite no authority in support of this proposition that they have a right to permanently and continuously trespass upon the Tidwell Property if it is a "necessary part" of the prescriptive easement. We doubt such authority exists.

The Reinbotts next argue that "[t]he trial court awarded actual damages to [Tidwell] for the trespass beyond the area of the prescriptive easement. Even assuming that the prescriptive easement does not include the apron, [Tidwell] was specifically awarded actual damages for trespass for the bridge." Although the Reinbotts do not develop this argument any further, it appears that they are claiming that the Judgment awarding damages for their prior acts of trespass serves as a private eminent domain judgment so that they have acquired a right to possess the land upon which they are encroaching upon the Tidwell Property outside of the Easement. This argument is without merit. "Taking of private property for private use is a violation of Article I, Section 28 of the Missouri Constitution." *Ridgway*, 26 S.W.3d at 434.

The Reinbotts' third attempted justification is that they "obtained a permit to build the [R]iver [B]ridge from … the Corps of Engineers." They proceed to argue that the application and the verification letter for this permit require that the person constructing the bridge must maintain the bridge and control erosion. As in the preceding argument, they fail to develop this contention, but seem to suggest that the permit from the Corp of Engineers authorizes them to permanently and continuously trespass upon the Tidwell Property outside of the Easement. They fail to cite any legal authority for this proposition, and we can find none.

To the extent that the injunction in paragraph three of the Judgment grants the Reinbotts the right to maintain those parts of the River Bridge on the Tidwell Property outside of the Easement, property in which they have no legal interest, it is a misapplication of the law and in error.

### iv) *Change in Use by Construction of Improvement in the Easement*

In his Point I, Tidwell argues that the construction of the River Bridge constituted the placement of an "obstruction" upon the servient estate by the dominant owner, creating a change in the quality of the use of the easement from its transitory nature during the prescriptive period. The Reinbotts counter this contention, claiming that the purpose of the prescriptive easement is for ingress and egress and that they have an "unlimited reasonable right of passage," citing *Maasen v. Shaw*, 133 S.W.3d 514, 519 (Mo.App.2004), which encompasses the construction of the River Bridge to further the purpose of ingress and egress. They contend that, therefore, they "merely changed the degree of the use …, but they did not change the quality of the use."

Because of our holding that the part of the Judgment granting an injunction is overbroad by including the parts of the River Bridge lying outside of the Easement and must be reversed, we do not reach the merits of this point. Given our

holding, the resolution of this issue requires additional factual determinations by the trial court which were not contemplated by the trial court in view of its erroneous determination to authorize the Reinbotts' maintenance of the River Bride on the parts of the Tidwell Property lying outside of the Easement. We offer the following observations for the purpose of assisting the trial court upon remand.

RESTATEMENT (THIRD) OF PROPERTY § 4.10 offers some guidance in considering this issue. It provides, in relevant part:

> [T]he holder of an easement or profit as defined in § 1.2 is entitled to use the servient estate in a manner that is reasonably necessary for the convenient enjoyment of the servitude. The manner, frequency, and intensity of the use may change over time to take advantage of developments in technology and to accommodate normal development of the dominant estate or enterprise benefited by the servitude. Unless authorized by the terms of the servitude, the holder is not entitled to cause unreasonable damage to the servient estate or interfere unreasonably with its enjoyment.

Comment e to this section gives further guidance on this issue by providing, in part:

> When reasonably necessary to the convenient enjoyment of an easement, the holder of the easement may make improvements and construct improvements on the servient estate for enjoyment of the easement. These rights are subject to any limits established by the terms of the servitude determined under § 4.1, and subject to the proviso that the holder of the servitude is not entitled to cause unreasonable damage to the servient estate or interfere unreasonably with its enjoyment. See Comment g. The manner of the servitude's creation may be relevant in determining the extent of the right to make improvements. *Easements created by adverse or prior use generally are more restrictive than others because the scope of the easement is based on the use that gave rise to its creation.* (Emphasis added).[5]

The trial court, upon remand, will need to resolve the factual questions related to whether the portion of the River Bridge within the Easement, without consider-

---

**5.** RESTATEMENT (THIRD) OF PROPERTY (SERVITUDES) § 4.10 cmt. g (2000) provides:

*g. Unreasonable damage to servient estate.* Unless the parties have agreed otherwise, the holder of an easement is not entitled to cause unreasonable damage to the servient estate. Because the holder of an easement is generally entitled to enter the servient estate to make improvements and construct improvements, a certain amount of damage or inconvenience to the servient estate may be within the contemplation of the parties. However, under the rule stated in this section, the servitude owner is not entitled to cause any greater damage than that contemplated by the parties, or reasonably necessary to accomplish the purposes of the servitude. Unless clearly contemplated by the parties, it is not assumed that the servient owner intends to permit the easement owner to remove existing structures or terminate existing uses of the servient estate.

In determining whether a particular improvement will cause unreasonable damage to the servient estate, aesthetics and the character of the property are important concerns. Straightening and paving roads in urban environments, for example, may enhance the value and enjoyment of both dominant and servient estates, while the same actions in a rural area may significantly damage the servient estate.

Whether a particular use of an easement is considered to cause unreasonable damage to the servient estate may change over time. A use that is reasonable when both dominant and servient estates are agricultural in character may become unreasonable when they have become suburban. Changes in technology may render damage formerly accepted as normal, or reasonable, abnormal and unreasonable.

ation of the parts of the bridge lying outside of the Easement which may or may not be removed by Tidwell, is reasonably necessary to the convenient enjoyment of the Easement and whether it causes unreasonable damage to the servient estate or interferes unreasonably with its enjoyment. Based upon these factual determinations, the trial court can then proceed to craft an appropriate remedy, if any.

### b) *Damages*

Tidwell's Point III contends that the trial court erred in its damage award on his trespass claim, in that it failed to include any damages for the cost of removal of the River Bridge either in its entirety or those parts of the bridge lying outside of the Easement.

The Reinbotts concede in their brief that: (1) Tidwell "claimed damages for the removal of the bridge"; (2) the trial court "concluded that the bridge was a part of the easement, and therefore, [Tidwell] was not entitled to damages to remove the bridge"; and (3) for the trial court to "award damages for removal of the bridge would be inconsistent with the judgment of the trial court."

"The measure of damages to real property, where the property can be restored to its former condition, is the difference in its fair market value before and after the injury, or the cost of restoring it, whichever is less." *Smith,* 15 S.W.3d at 773. In the instant case, neither party offered any evidence of diminished value. The only damage evidence came from Tidwell's testimony, and it related solely to the cost of "putting it back like it was." We are cognizant of and give deference to the trial court's opportunity to judge the credibility and weight to be given evidence at trial. *Stom v. St. Clair Corp.,* 153 S.W.3d 360, 365 (Mo.App.2005). However, from the record we are unable to determine whether the trial court based its damage award upon consideration of Tidwell's credibility or lack thereof, or upon its erroneous conclusion that the Reinbotts had a legal right to maintain those parts of the River Bridge on the Tidwell Property lying outside of the Easement.

We accept the Reinbotts' concession that, given the trial court's determination that the River Bridge was a "part of the easement," even though parts of it lie on the Tidwell Property outside of the Easement, an award of damages for removal of the bridge by the trial court would have been inconsistent with the Judgment. Such a failure of the trial court to consider an award of damages for removal of at least the parts of the River Bridge on the Tidwell Property outside of the Easement, given our holding that the Reinbotts have no legal right to maintain the River Bridge outside of the Easement, would have been a misapplication of the law and an error.

However, we "will not invade the trial court's province, as the trier of fact, to determine the weight and credibility of the evidence as to damages." *Id.* We are, therefore, required to reverse the Judgment as to its award of damages for trespass and remand for the trial court's determination of damages consistent with this opinion.

### 5) *Decision*

Paragraph three of the Judgment on Count III (Injunction) of Reinbotts' petition and paragraph six of the Judgment on Count 2 (Trespass) of Tidwell's counterclaim are reversed and remanded for further proceedings by the trial court consistent with this opinion. The Judgment is otherwise affirmed.

RAHMEYER, P.J., and PARRISH, J., concur.